## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN E. JAUNICH, individually and on behalf of all others similarly situated, | Case No. 20-cv-1567 (PAM/BRT) |
| Plaintiff, | |
| v. | |
| STATE FARM LIFE INSURANCE COMPANY, | |
| Defendant. | |

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES TO BE DECIDED .......................................................... 3

STATEMENT OF FACTS ........................................................................................ 4

I.     THE LIFE INSURANCE CONTRACTS BETWEEN STATE
       FARM AND THE CLASS. ................................................................................ 4

II.    THE POLICY IDENTIFIES SPECIFIC CHARGES STATE FARM
       IS AUTHORIZED TO DEDUCT FROM ACCOUNT VALUES .......................... 5

       A.    The COI Charge is a mortality charge. ........................................... 5

       B.    The Policy sets fixed expense deductions. ..................................... 6

       C.    State Farm increases COI charges with undisclosed loads. .......... 6

III.   ARGUMENT ................................................................................................. 8

IV.    STANDARD ON CLASS CERTIFICATION ....................................................... 9

V.     THE CLASS MEETS EACH OF THE REQUIREMENTS OF
       RULE 23(a). ............................................................................................... 10

       A.    The Class Satisfies the Numerosity Requirement. ...................... 10

       B.    There are Common Questions of Law and Fact. .......................... 11

       C.    Plaintiff's Claims are Typical of Those of the Class. ................. 14

       D.    Plaintiff satisfies the adequacy requirement. ............................... 15

             1.    That State Farm's actual COI rates are, at rare times,
                   lower than its morality rates does not create an intra-
                   class conflict. .................................................................... 17

             2.    State Farm's contention that it "pooled" its mortality
                   rates does not create an intra-class conflict. .................... 19

             3.    State Farm's contention that it differentiated for
                   tobacco use does not create an intra-class conflict. ......... 23

VI.    PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE
       23(b)(3) ..................................................................................................... 24

A.      Predominance is satisfied. ............................................................... 24

        1.      Liability is subject to class-wide determination. ............................ 25

                a)      Common questions predominate Plaintiff's
                        breach of contract claims. ...................................... 26

        2.      Damages can be determined on a class-wide basis. ........................ 28

                a)      State Farm's offset affirmative defense
                        premised on the cross-over does not affect the
                        reliability of Plaintiff's damages model. ............................... 30

                b)      Calculating damages for policy owners who
                        selected "Death Benefit Option 1" and for
                        whom a death benefit was paid does not affect
                        the reliability of Plaintiff's damages model. ........................ 30

                c)      Mr. Witt's use of State Farm's unpooled and
                        tobacco-blended pricing mortality rates to
                        measure damages is reasonable and appropriate .................. 31

        3.      Class members' subjective understandings of the
                Policy's terms do not create individualized issues. ......................... 32

        4.      State Farm's statute of limitations defense does not
                create individualized issues. ................................................ 34

        5.      Superiority is satisfied. .................................................... 36

        6.      Rule 23(b)(2) Is Satisfied. ................................................. 37

CONCLUSION ........................................................................ 37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advance Trust & Life Escrow Services, LTA v. ReliaStar Life Ins. Co.*,
  No. 18-cv-02863, 2020 WL 5229677 (D. Minn. Sept. 2, 2020).................................. 35

*Alleman v. State Farm Life Ins. Co.*,
  334 F. App'x 470 (3d Cir. 2009) .................................................................................. 5

*Alpern v. Utilicorp United, Inc.*,
  84 F.3d 1525 (8th Cir. 1996) ...................................................................................... 14

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................................... 24

*Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.*,
  366 N.W.2d 271 (Minn. 1985)..................................................................................... 33

*Bally v. State Farm Life Ins. Co.*,
  335 F.R.D. 288 (N.D. Cal. 2020), *Rule 23(f) petition denied*,
  No. 20-80070 (9th Cir. July 22, 2020)................................................................. *passim*

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ...................................................................................... 22

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005) ...................................................................................... 25

*C.H. Robinson Worldwide, Inc. v. Lobrano*,
  No. 10—4966, 2011 WL 2912700 (D. Minn. July 19, 2011) .................................... 23

*In re Conseco Life Ins. Co. Cost of Ins. Litig.*,
  No. ML 04-1610, 2005 WL 5678842 (C.D. Cal. Apr. 26, 2005) ................................. 9

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*,
  920 F. Supp. 2d 1050 (N.D. Cal. 2013) ........................................................................ 6

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*,
  2013 WL 10349975 (N.D. Cal. Nov. 8, 2013) .............................................................. 6

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
  270 F.R.D. 521 (N.D. Cal. 2010).................................................................................. 9

*Crissen v. Gupta*,
   No. 2:12-CV-00355-JMS, 2014 WL 4129586
   (S.D. Ind. Aug. 19, 2014)............................................................................ 14

*Day v. Celadon Trucking Servs., Inc.*,
   827 F.3d 817 (8th Cir. 2016) .............................................................. 25, 28

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) ...................................................................... 14

*DiFelice v. U.S. Airways, Inc.*,
   235 F.R.D. 70 (E.D. Va. 2006) ................................................................... 22

*Doran v. Mo. Dep't of Soc. Servs.*,
   251 F.R.D. 401 (W.D. Mo. 2008) ............................................................... 13

*Ebert v. Gen. Mills, Inc.*,
   823 F.3d 472 (8th Cir. 2016) ...................................................................... 25

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)..................................................................................... 36

*Feller v. Transamerica Life Ins. Co.*,
   No. 16-cv-01378, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017)............... 9, 12, 15, 26

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11-cv-8405, 2013 WL 12224042 (S.D.N.Y. July 12, 2013)...................... 9, 12, 26

*Garrick v. Northland Ins. Co.*,
   469 N.W.2d 709 (Minn. 1991)..................................................................... 32

*Glenn v. Daddy Rocks, Inc.*,
   203 F.R.D. 425 (D. Minn. 2001).................................................................. 10

*Haberle v. Buchwald*,
   480 N.W.2d 351 (Minn. Ct. App. 1992)...................................................... 34

*Hanks v. Lincoln Life & Annuity Company of New York*,
   330 F.R.D. 374 (S.D.N.Y. 2019) ................................................................ 9, 12, 15, 26

*In re Hartford Sales Practices Litig.*,
   192 F.R.D. 592 (D. Minn. 1999).................................................................. 15

*James v. Paul*,
   49 S.W.3d 678 (Mo. 2001) .......................................................................... 23

*Krueger v. Ameriprise Fin., Inc.*,
  304 F.R.D. 559 (D. Minn. 2014)............................................................21

*Larson v. John Hancock Life Ins. Co.*,
  No. RG16813803, 2017 WL 4284163
  (Cal. Super. Ct. March 23, 2017).............................................9, 12, 15, 26

*Lee v. Allstate Life Ins. Co.*,
  361 Ill. App. 3d 970 (Ill. Ct. App. 2005) ....................................................9

*Levin v. C.O.M.B. Co.*,
  441 N.W.2d 801 (Minn. 1989).................................................................35

*Lockwood Motors, Inc. v. Gen. Motors Corp.*,
  162 F.R.D. 569 (D. Minn. 1995)..............................................................10

*Lyon Fin. Servs., Inc. v. Illinois Paper and Copier Co.*,
  848 N.W.2d 539 (Minn. 2014).................................................................26

*Minn. Laborers Health and Welfare Fund v. Granite Re, Inc.*,
  844 N.W.2d 509 (Minn. 2014).................................................................34

*Park Nicollet Clinic v. Hamann*,
  808 N.W.2d 828 (Minn. 2011).................................................................26

*Paxton v. Union Nat. Bank*,
  688 F.2d 552 (8th Cir. 1982) ...................................................................11

*Portz v. St. Cloud State Univ.*,
  297 F. Supp.3d 929 (D. Minn. 2018).................................................10, 11

*In re Potash Antitrust Litig.*,
  159 F.R.D. 682 (D. Minn. 1995).........................................................15, 35

*Rozema v. Marshfield Clinic*,
  174 F.R.D. 425 (W.D. Wis. 1997) ............................................................14

*Rusthoven v. Commercial Standard Ins. Co.*,
  387 N.W.2d 642 (Minn. 1986).................................................................33

*Schwartz v. Upper Deck Co.*,
  183 F.R.D. 672 (S.D. Cal. 1999) ..............................................................14

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
  531 U.S. 497 (2001)................................................................................23

*Spegele v. USAA Life Ins. Co.*,
  336 F.R.D. 537 (W.D. Tex. 2020) .......................................................................*passim*

*Stuart v. State Farm Fire and Casualty Co.*,
  910 F.3d 371 (8th Cir. 2018) ..................................................................... 10

*Teva Pharm. USA, Inc. v. Abbott Labs.*,
  252 F.R.D. 213 (D. Del. 2008) ................................................................... 13

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ................................................................................... 25

*Vierkand by Johnson v. AMCO Ins. Co.*,
  543 N.W.2d 117 (Minn. Ct. App. 1996) ..................................................... 33

*Vogt v. State Farm Life Ins. Co.*,
  No. 2:16-cv-04170-NKL, 2018 WL 1955425
  (W.D. Mo. April 24, 2018), *aff'd* 963 F.3d 753 (8th Cir. 2020),
  *cert. denied sub nom.*, No. 20-1008, 2021 WL 1521013
  (U.S. Apr. 19, 2021) ................................................................................*passim*

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................... 11

*Yue v. Conseco Life Ins. Co.*,
  282 F.R.D. 469 (C.D. Cal. 2012) ............................................................... 12

*In re Zurn Pex Plumbing Products Liability Litig.*,
  644 F.3d 604 (8th Cir. 2011) ..................................................................... 29

## Other Authorities

Fed. R. Civ. P. 23 .......................................................................................*passim*

Newberg on Class Actions § 3:62 (5th ed.) ..................................................... 22

Plaintiff John E. Jaunich ("Mr. Jaunich" or "Plaintiff") on behalf of himself and the proposed Class of Minnesota policy owners, challenges Defendant State Farm Life Insurance Company's ("State Farm" or "Defendant") interpretation and implementation of its form universal life insurance policy—"Form 94030." This case is well-suited for class certification because it turns on the interpretation of a form contract under Minnesota law, and State Farm's uniform conduct toward all class members. In fact, two nearly identical cases brought against State Farm on behalf of classes of Missouri and California policy owners of the exact same policy form have been certified in the last few years. The case involving Missouri Form 94030 owners was tried to jury verdict in 2018, *see Vogt v. State Farm Life Ins. Co.*, 2:16-cv-4170-NKL (W.D. Mo.) ("*Vogt*"), and affirmed on appeal by the Eighth Circuit, *see* 963 F.3d 753 (8th Cir. 2020), and the United States Supreme Court denied State Farm's writ of certiorari seeking review of class certification, Dkt. 20-1008 (U.S. Apr. 19, 2021). The case involving California Form 94030 owners was certified and the Ninth Circuit denied State Farm's petition for Rule 23(f) review. *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288 (N.D. Cal. 2020), *Rule 23(f) petition denied*, No. 20-80070 (9th Cir. July 22, 2020) ("*Bally*"). For this reason, Plaintiff's motion affirmatively addresses the issues that State Farm raised in *Vogt* and *Bally* (and Plaintiff expects State Farm may raise here) with the goal of providing the Court context to these previously litigated and resolved issues.

State Farm's Form 94030 life insurance policy (the "Policy") is a "universal" life insurance contract. Unlike standard "term" life insurance, universal life insurance is designed to provide a lifetime death benefit to the insured plus an investment feature or

savings component, called the "Account Value," that allows policy owners to earn interest on their accumulated premiums over time. The Policy provides for the deduction of certain charges, including a percent of premium expense charge, taken by State Farm before the net premium is deposited into each policy owner's Account Value, as well as a "Monthly Deduction" taken from the Account Value each month.

The Policy provides that the "Monthly Deduction" includes the cost of insurance charge (the "COI charge") and the expense charge (the "Expense charge"). Plaintiff contends in his Complaint that State Farm determines the COI charges improperly. The Policy provides a formula to calculate the COI charge component of the Monthly Deduction using cost of insurance rates ("COI rates"). State Farm promises its COI rates are "for each policy year based on the Insured's age on the policy anniversary, sex, and applicable rate class," and "can be adjusted for projected changes in mortality." Policy year, age sex, and rate class are factors associated with assessing an insured's mortality risk (the risk the insured will die). But State Farm does not base its COI rates solely on the mortality factors identified in the Policy. Instead, State Farm loads its COI rates and corresponding COI charges with unlisted, non-mortality factors, including expenses and profit, in breach of the Policy. This case therefore presents a predominating, common question of liability, the answer to which will resolve thousands of claims: whether State Farm breached the Policy by taking funds from policy owners without authorization under the Policy's relevant terms.

Like liability, damages can be readily determined on a class-wide basis by calculating the lost Account Value (with interest at the applicable policy rate) for each

policy owner resulting from the COI overcharges. The excess deductions are calculated using the same formula for every class member—simply removing from the COI rates any loads in excess of State Farm's mortality expectations or, in other words, subtracting the non-mortality component attributable to State Farm's use of impermissible factors in setting COI rates. By way of example, by loadings its COI rates with unlisted factors at pricing and repricing, State Farm deprived Mr. Jaunich of ████ in Account Value due to the excessive deductions. These amounts can be similarly and systematically calculated for each class member and aggregated for the entire Class, as Plaintiff's expert, Scott Witt, did for the Missouri and California classes in *Vogt* and *Bally*, and which he can do for the putative Minnesota class.

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Does Plaintiff satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) for certification of a class of current and former owners of State Farm's Form 94030 policy issued in the State of Minnesota, for purposes of determining State Farm's liability for breach of contract and the resulting monetary damage suffered by each class member?

2.      Does Plaintiff satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2) for certification of a class of current and former owners of State Farm's Form 94030 policy issued in the State of Minnesota, for purposes of declaring the meaning of the Policy's COI rates and Expense charge provisions and issuing an injunction enjoining Defendant from continuing to engage in conduct in breach of the Policies, and

ordering Defendants to comply with terms of the Policies in regard to its assessment of charges against Plaintiff and Class members' Account Values?

## STATEMENT OF FACTS

**I.     THE LIFE INSURANCE CONTRACTS BETWEEN STATE FARM AND THE CLASS.**

State Farm began issuing Form 94030 universal life insurance policies in Minnesota in 1994. Declaration of Scott J. Witt ("Witt Dec."), ¶ 48; *id.* at Ex. I[1] (Holzbauer Dep.), 142:10-20. Mr. Jaunich purchased his Form 94030 Policy in Delano, Minnesota on December 7, 1995. *See* application attached to the Policy.[2] Although existing policies remain in force, State Farm ceased issuing new Form 94030 policies in Minnesota in 2005. Witt Dec., ¶ 48.

The Policy is a valid and enforceable contract between each policy owner and State Farm. Dkt. 1 (Compl.), ¶ 13. Its terms are not subject to individual negotiation and are materially the same for all policy owners, and the Policy cannot be altered by the agent's representations at the time of sale, or by any other discussions or writings. Policy at 11 ("The [P]olicy is the entire contract," and it consists of "the Basic Plan, any amendments, endorsements, and riders, and a copy of the application."). State Farm's obligations (like the policy owner's) cannot be obviated by informal consent, waiver, or some other act because "[o]nly an officer has the right to change this [P]olicy. No agent has the authority to change the [P]olicy or to waive any of its terms." *Id.*

---

[1] All alphabetical references to exhibits refer to the exhibits to the Declaration and Report of Scott J. Witt filed simultaneously herewith.

[2] Plaintiff's Policy is attached as Ex. B to the Declaration of Mr. Witt.

The Policy is a "universal" life insurance policy. In contrast to term life insurance, which provides only a death benefit, the Policy includes an Account Value where, after deduction of a premium expense charge, premiums are deposited and accumulate interest at a fixed rate of no less than four percent (4%), much like a savings account. *Id.*; *see* Witt Dec., ¶¶ 18-27.

## II.   THE POLICY IDENTIFIES SPECIFIC CHARGES STATE FARM IS AUTHORIZED TO DEDUCT FROM ACCOUNT VALUES.

The Policy authorizes State Farm to take from the Policy's Account Value a Monthly Deduction comprised of the separately identified: (a) COI charge; (b) charges for any riders; and (c) the $5.00 Expense charge. Policy at 9.

### A.   <u>The COI Charge is a mortality charge.</u>

The Policy provides that the COI charge is determined by multiplying the COI rate by the Policy's net amount at risk (the amount by which the death benefit amount exceeds the Account Value; in other words, the net amount State Farm will have to pay the beneficiary if the insured dies). Witt Dec., ¶ 24; Policy at 10. The Policy then states that COI rates "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and that "[s]uch rates can be adjusted for projected changes in mortality." *Id*. The factors identified in the Policy are characteristics commonly understood and used within the life insurance industry to determine the mortality expectations for an insured. Witt Dec., ¶¶ 29-31; *id.* at Ex. F (Phipps Tr.), 24:24-25:9; *id.* at Ex. E (Streily Tr.), 155:19-158:22, 159:6-160:20, 196:6-197:23 ; *see also Vogt*, 963 F.3d at 761 (recognizing that age, sex, and applicable rate class are mortality factors); *Alleman*

*v. State Farm Life Ins. Co.*, 334 F. App'x 470, 472 (3d Cir. 2009) (noting that age and sex are mortality factors); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, 920 F. Supp. 2d 1050, 1061 (N.D. Cal. 2013), *vacated pursuant to settlement*, 2013 WL 10349975 (N.D. Cal. Nov. 8, 2013) ("Because age and sex are the guiding factors in the lifespan of a person, a layperson would ordinarily attach the rates to mortality.").

State Farm does not disclose to policyholders the actual COI rates or factors included therein. Witt Dec., Ex. I (Holzbauer Tr.), 178:21-25; *id.* at Ex. E (Streily Tr.), 124:13-23; *id.* at Ex. C (annual statements); *id.* at Ex. D (Policy illustration) ; *see also Vogt*, 963 F.3d at 765 (noting that information regarding COI charges in annual statements sent to Plaintiff from State Farm are "insufficient to put such a person on notice and trigger the running of the statute of limitations."); *Bally*, 335 F.R.D. 288, 304 (N.D. Cal. 2020) (granting certification of a California class, stating "State Farm does not adduce any evidence to show that 'policyholder[s] would have been on notice that State Farm was considering unlisted variables in calculation [of] the COI'").

**B.      The Policy sets fixed expense deductions.**

The Policy separately authorizes State Farm to deduct a 5% premium expense charge from each premium paid as well as the fixed monthly Expense charge of $5.00. Policy at 3.

**C.      State Farm increases COI charges with undisclosed loads.**

Mr. Jaunich contends the Policy provision requiring that monthly COI rates "for each policy year" be "based on the Insured's age on the Policy anniversary, sex, and applicable rate class" means exactly what it says: that State Farm must determine COI rates

using only the listed factors, not undisclosed factors to increase the COI rate. The *Vogt* court agreed with Plaintiff's interpretation of the Policy, and that interpretation was affirmed on appeal by the Eighth Circuit. *See Vogt*, 963 F.3d at 763-64.



. *See* Witt Dec., ¶¶ 29-40; *id.* at Ex. E (Streily Tr.), 151:23-152:15, 160:15-20; *id.* at Ex. I (Holzbauer Tr.), 145:15-19.

. *See Vogt*, Dkt. 335; Witt Dec., Ex. G (New Jersey Actuarial Memorandum) at 5; *id.* at Ex. E (Streily Tr.), 144:20-24; 224:6-18 (

); *see also* Witt Dec., ¶¶ 41-45. Inclusion of these undisclosed factors has a substantial impact on the amounts deducted each month from policy owners' Account Values. On the same policy form and identical pricing process (*See id.*, ¶ 10), a jury found State Farm's overcharges caused over $34 million in lost Account Value for a class of approximately 24,000 Missouri policy owners. *Vogt*, 963 F.3d at 761.

In this case, the loading of the COI rates was similarly substantial. For instance,

███████████████████████████████████████████████████

████████████████████████████████. Witt Dec., ¶ 51.

Because these Policy overcharges result from State Farm's uniform administration of the Policy, all policy owners are subject to the same set of loaded COI rates. *See id*., ¶ 10, *id*. at Ex. E (Streily Tr.), 140:3-145:10, 146:17-147:5; 171:21-172:11.

## III.   ARGUMENT

Plaintiff seeks to certify claims for breach of contract (Count I – Cost of Insurance Charge and Count II – Expense Charge), and declaratory and injunctive relief (Count IV). Dkt. 1. Plaintiff now moves for an order certifying the following class ("the Class"):

> All persons who own or owned a universal life policy issued by State Farm on its policy form 94030 in the State of Minnesota whose policy was in-force on or after January 1, 2002 and who was subject to at least one monthly deduction.[3]

Two courts have already found class certification appropriate in nearly identical cases involving the same defendant and policy form at issue here. The Western District of Missouri in *Vogt* certified a class of Missouri policy owners making the same allegations on the Form 94030 policy, and the Eighth Circuit affirmed class certification on appeal and the United States Supreme Court denied State Farm's petition for certiorari challenging class certification. *Vogt v. State Farm Life Ins. Co.*, No. 2:16-cv-04170-NKL, 2018 WL

---

[3] Excluded from the Class are: State Farm; any entity in which State Farm has a controlling interest; any of the officers, directors, or employees of State Farm and their immediate family, the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiff's counsel's firms; any Judge to whom this case is assigned, and his or her immediate family; and policies that insured males with an issue age of zero and terminated in the first policy year.

1955425, at *6 (W.D. Mo. April 24, 2018), *aff'd* 963 F.3d 753, 766-68 (8th Cir. 2020), *cert. denied sub nom.*, No. 20-1008, 2021 WL 1521013 (U.S. Apr. 19, 2021). The Northern District of California in *Bally* likewise certified a class of California policy owners making the same allegations on the Form 94030 policy as are asserted here, and State Farm's Rule 23(f) petition for permission to appeal was denied. *Bally*, 335 F.R.D. at 305, *Rule 23(f) appeal denied*, No. 20-80070 (9th Cir. July 22, 2020).

Moreover, courts frequently certify class actions, like this one, alleging breaches of the cost of insurance provisions of standardized life insurance policies. *See, e.g., Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537 (W.D. Tex. 2020) ("*USAA COI*"); *Feller v. Transamerica Life Ins. Co*., No. 16-cv-01378, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ("*Transamerica COI*"); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig*., 270 F.R.D. 521, 533 (N.D. Cal. 2010); *In re Conseco Life Ins. Co. Cost of Ins. Litig*., No. ML 04-1610, 2005 WL 5678842, at **4, 9 (C.D. Cal. Apr. 26, 2005); *Larson v. John Hancock Life Ins. Co*., No. RG16813803, 2017 WL 4284163 (Cal. Super. Ct. March 23, 2017) ("*John Hancock COI*"); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2013 WL 12224042, at *13, *18 (S.D.N.Y. July 12, 2013) ("*Phoenix COI*"); *Hanks v. Lincoln Life & Annuity Company of New York*, 330 F.R.D. 374 (S.D.N.Y. 2019) ("*Lincoln Life COI*"); *Lee v. Allstate Life Ins. Co.*, 361 Ill. App. 3d 970 (Ill. Ct. App. 2005). Class certification here is likewise proper.

## IV.    STANDARD ON CLASS CERTIFICATION

A motion for class certification under Federal Rule of Civil Procedure 23 involves a two-part analysis. First, under Rule 23(a), the proposed class must satisfy the prerequisite

requirements of numerosity, commonality, typicality, and fair and adequate representation. *Stuart v. State Farm Fire and Casualty Co.*, 910 F.3d 371, 374 (8th Cir. 2018). Second, the proposed class must meet at least one of the three requirements of Rule 23(b). *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 579 (D. Minn. 1995). "District courts ultimately retain broad discretion in determining whether or not to certify a class under Rule 23." *Id*. at 573.

In this case, the proposed Class meets all the requirements of Rule 23(a) as well as the requirements in Rule 23(b)(2) and Rule 23(b)(3).

## V.   THE CLASS MEETS EACH OF THE REQUIREMENTS OF RULE 23(a).

### A.   <u>The Class Satisfies the Numerosity Requirement.</u>

Rule 23(a)(1) requires that the class be sufficiently numerous such that joinder of all members would be impracticable. *Portz v. St. Cloud State Univ.*, 297 F. Supp.3d 929, 944 (D. Minn. 2018). In considering the numerosity requirement, the court considers "such factors as the size of the class, the ease of identifying its members and determining their addresses, the facility of making service on them if joined, their geographic dispersion and whether the size of the individual claims is so small as to inhibit individuals from separately pursuing their own claims." *Id*. (quoting *Glenn v. Daddy Rocks, Inc.*, 203 F.R.D. 425, 429 (D. Minn. 2001)). Typically, "a putative class size of forty will support a finding of numerosity." *Id*. (internal quotations omitted). The proposed Class is sufficiently numerous. State Farm's records show there are over ███████ policies in the proposed class. Witt Dec., ¶ 49. These Minnesota-issued Policies are easily identifiable from State Farm's data. *Id*.

B.     **There are Common Questions of Law and Fact.**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." A plaintiff must show that the claims "depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Portz*, 297 F. Supp.3d at 945 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)) (internal marks omitted). But commonality "does not require that every question of law or fact be common to every member of the class … and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (internal citations and quotations omitted). "[F]or purposes of Rule 23(a) even a single common question will do." *Wal-Mart Stores, Inc.*, 564 U.S. at 359 (internal citations and quotations omitted).

Plaintiff alleges that State Farm made and continues to make excessive deductions for COI charges. Plaintiff asserts that State Farm has determined COI rates in a manner not authorized by the Policy, and the resulting deductions from Account Values exceed the amounts permitted by the Policy's terms. Common evidence of State Farm's uniform methodology of calculating deductions on a common form Policy will establish whether State Farm is liable for breach of contract as a result of its failure to determine COI rates using only the listed mortality factors and inflation of the COI charges deducted from policy owners' Account Values with undisclosed loads (Count I). Likewise, common evidence will determine whether State Farm is deducting undisclosed expenses through the

COI charge, whether the Policy limits the amount of expenses State Farm is permitted to deduct on a monthly basis to the fixed amount of the Expense charge, and whether State Farm is therefore in breach of its contracts with policy owners (Count II).

Each claim depends on a common course of conduct—State Farm entered into identical contracts and uniformly loaded undisclosed factors into its COI rates for all policy owners. *See Vogt*, 2018 WL 1955425, at *3 (finding commonality satisfied because plaintiff's claims all turned on interpretation of the standard form policy and State Farm's uniform incorporation of non-mortality factors into its COI rates); *Bally*, 335 F.R.D. at 301-02 (finding commonality satisfied, rejecting State Farm's argument that individualized sales presentations prior to each class member's purchase of the Policy would result in different policy interpretations of each class member's standard form policy); *USAA COI*, 336 F.R.D. at 552 (finding commonality satisfied because "whether Defendant used factors outside those enumerated in the Class Policies to determine its COI Rates will rely on the same evidence throughout the class"); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 476 (C.D. Cal. 2012) (whether uniform, standard language contained in all insurance policies permitted insurer's adjustment of COI rates was a common question); *Transamerica COI*, 2017 WL 6496803, at *6 ("the issue of breach … is also common to all prospective class members"); *Phoenix COI*, 2013 WL 12224042, at *8 ("[B]reach of contract *is* the central issue in the case brought by [plaintiff] on behalf of the [] Class ….") (emphasis in original); *John Hancock COI*, 2017 WL 4284163, at *6 (finding that "liability issues are exclusively common issues uniting the class"); *Lincoln Life COI*, 330 F.R.D. at 380 (finding commonality met where claims "turn on common contentions of what factors … Lincoln

Life used to calculate the … COI rate increase and whether insurance contracts allow for a rate increase based on those factors").

So, for every putative class member, the following questions of law are common:

- Is State Farm limited to using only the listed mortality factors when determining COI rates?

- Is State Farm permitted to deduct more in expenses than provided by the Policy's Expense charge?

Moreover, proving this case is dependent on similarly common questions of fact because State Farm calculated and took its deductions in the same manner for all policy owners:

- Did State Farm use factors not specified in the Policy to determine its COI rates?

- Did State Farm deduct expenses through the COI Charge?

- Did State Farm take more money from policy owners' Account Values than it was authorized to take?

Each of the foregoing questions is common to each policy owner and will be answered the same, one way or the other, for each member of the Class because State Farm's conduct was consistent as to all policy owners.[4] Witt Dec., ¶ 10; *id.* at Ex. E (Streily Tr.), 166:7-22, 171:21-172:11. Courts routinely recognize that when the answer to a question turns on the defendant's conduct it presents a common question.[5] For these

---

[4] At a minimum, these common questions support certification under Rule 23(c)(4).

[5] *See, e.g., Teva Pharm. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213, 225 (D. Del. 2008) (commonality test satisfied because questions generally focused on defendants' conduct and, as such, were common to all class members); *Doran v. Mo. Dep't of Soc. Servs.*, 251 F.R.D. 401, 404 (W.D. Mo. 2008) ("In determining commonality, the appropriate focus is [on] the conduct of the defendant[s], not the plaintiffs.") (citing cases; internal quotations

13

reasons, each of the foregoing questions is common to each policy owner and will be answered the same, one way or the other, for each member of the Class.

### C. Plaintiff's Claims are Typical of Those of the Class.

The typicality requirement is satisfied when the claims defenses of the representative party are typical of those of the class. Rule 23(a)(3). The requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). In assessing typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

The typicality requirement is easily satisfied here because Plaintiff asserts the same claims individually that he asserts on behalf of the Class. Everyone was subject to materially identical policy language and State Farm performed (and allegedly breached) the Policy in the same way for each class member. *See Vogt*, 2018 WL 1955425, at *5 (finding plaintiff's claims typical of those of the class because the claims arose from and related to the interpretation and application of the policy and the policy language, and State Farm's methodology for determining COI rates was uniform for all class members); *Bally*,

---

omitted); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 683 (S.D. Cal. 1999) (Rule 23(a)(2) focus is on defendant's conduct); *Rozema v. Marshfield Clinic*, 174 F.R.D. 425, 439 (W.D. Wis. 1997) ("[B]ecause proof of liability will focus on defendants' conduct and not defendants' relationship with individual plaintiffs, it is a common question to the entire proposed class, and sufficient to satisfy Rule 23(a)(2)."); *Crissen v. Gupta*, No. 2:12-CV-00355-JMS, 2014 WL 4129586, at *15 (S.D. Ind. Aug. 19, 2014) ("The commonality requirement focuses on Defendants' conduct[.]").

335 F.R.D. at 302 (same); *USAA COI*, 336 F.R.D. at 552 (finding typicality satisfied because "Plaintiff's Policy and the Class Policies are materially identical, and Defendant's alleged breach of these policies was uniform for both Plaintiff and the proposed class."); *John Hancock COI*, 2017 WL 4284163, at *10 (certifying class of policy owners because the plaintiff's claims were "typical, indeed, substantially identical, to those of the class" because the plaintiff and the class agreed to the same policy language); *Lincoln Life COI*, 330 F.R.D. at 380-81; *Transamerica COI*, 2017 WL 6496803, at *8.

### D. <u>Plaintiff satisfies the adequacy requirement.</u>

Adequacy requires that the class representative and class counsel "fairly and adequately protect the interests of the class." Rule 23(a)(4). "In order to satisfy the adequacy requirement, the Plaintiffs must show that '(1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 604 (D. Minn. 1999) (quoting *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 692 (D. Minn. 1995)). Plaintiff satisfies the adequacy requirement.

*First*, Plaintiff's claims are consistent with those of the Class. He claims he was overcharged because State Farm failed to keep its promises in the Policy and to act within its authority in making deductions from his Account Value. Because the terms of the Policy are the same for everyone and State Farm priced it uniformly, if State Farm used unauthorized factors to increase COI rates, Plaintiff and all other policy owners suffered excessive COI charges.

*Second*, Plaintiff has sufficient interest in the case to ensure vigorous representation. He has a personal monetary interest in recouping the overcharges. Indeed, Plaintiff's expert's analysis is that Plaintiff was harmed in the amount of ███████ (the total lost Account Value resulting from wrongful COI deductions). Witt Dec., ¶ 61.

*Third*, Plaintiff has hired competent, experienced, and qualified counsel with expertise in class actions and cost of insurance cases, who have and will continue to prosecute the class claims vigorously. Norman Siegel, John Schirger, and the attorneys at Stueve Siegel Hanson and Miller Schirger have significant experience in prosecuting class litigation, including around twenty COI cases. The firms have tried class-action lawsuits to successful verdicts and have achieved significant monetary settlements for class members. In June 2018, Stueve Siegel and Miller Schirger successfully tried the *Vogt* case, a class action on the same Form 94030 policy at issue here, securing a jury verdict of $34,333,495.81 for Missouri policy owners. *See Vogt*, Dkt. 358 & 360. These attorneys subsequently defended that class judgment on appeal. Moreover, Stueve Siegel and Miller Schirger have successfully secured settlements on behalf of policy owners in similar cases against Lincoln National Life Insurance Company, and John Hancock Life Insurance Company. *See* Schirger Declaration at ¶ 5 (filed contemporaneously herewith).

Mr. Siegel and other lawyers in his firm have been appointed as class counsel in dozens of class actions throughout the country. *See* Siegel Declaration filed contemporaneously herewith. Likewise, Miller Schirger has significant experience handling complex insurance contract disputes and brings needed experience in that area to the case. *See* Schirger Declaration. Lockridge Grindal Nauen likewise has extensive

experience handling complex litigation in state and federal court. *See* Riebel Declaration filed contemporaneously herewith.

*Fourth*, as explained below, there are no conflicts among the class representative, the proposed class, or class counsel.

> 1. <u>That State Farm's actual COI rates are, at rare times, lower than its morality rates does not create an intra-class conflict.</u>

Plaintiff anticipates that State Farm will reassert is arguments made in *Vogt* and *Bally* that there is an intra-class conflict because some class members would be worse off if State Farm charged mortality-only rates. In *Vogt* and *Bally*, Mr. Witt's class-wide damages model revealed *some* months for *some* class members who had held their policies for many years where State Farm's actual COI rates were lower than what would have been charged if State Farm had used the contractual, mortality-only rates. The parties referred to this event as the "cross-over" because State Farm's mortality-only rates crossed-over (became higher than) its charged COI rates. Although Plaintiff disputes that State Farm is entitled to an offset for this so-called "cross-over" credit, this merits question need not be resolved now. There is no risk, however, that this issue will create an intra-class conflict.

In *Vogt,* State Farm argued to the jury that it should get an offset against damages for those months where State Farm charged some policy owners less than it was permitted to under the Policy. The jury agreed with State Farm and awarded damages that included an offset.[6] Giving State Farm this "cross-over" offset lowered total damages to the class by

---

[6] In *Vogt*, the plaintiff argued that this issue should not be submitted to the jury because State Farm had shown no legal basis to recover "undercharges" from its policy owners. In particular, the plaintiff argued that State Farm's decision to *not* breach the Policy in certain

less than 3%. *See* Schirger Dec., Ex. C (excerpts of transcript of *Vogt* Trial, hereafter "*Vogt*

Trial Tr."), 132:21-23, 137:17-137:7, 139:19-140:3. After applying the credit, a mere 29

(out of the nearly 24,000) class members were determined to have suffered no net loss and

received a judgment of $0. *See Vogt*, Dkt. 377-3 (*Vogt* Trial Ex. 242); Schirger Dec., Ex.

C (*Vogt* Trial Tr.), 417:12-15. This result in *Vogt* illustrates two things: 1) the incidence of

State Farm undercharging class members is extremely rare and has a minimal impact on

the damages class members have suffered, and 2) no class member could be made worse

off by the litigation. For example, the 29 individuals who did not suffer a net overcharge

in *Vogt* because the "cross-over" credit fully offset overcharges from loaded COI rates,

took nothing in the litigation, putting them in the same position economically as they would

have been had no case been brought. Thus, like *Vogt*, the *Bally* court concluded that the

fact that State Farm had charged less than it was authorized to in some instances did not

affect the reliability of Mr. Witt's damages model or create an intra-class conflict. *Bally*,

335 F.R.D. at 299-300, 303.

State Farm nevertheless argued that this "cross-over" phenomenon presented the

prospect that some current policy owners would be harmed if State Farm *changed its rates*

---

months could not serve as the basis for assessing belated charges against policy owners,
especially where State Farm had not identified any provision of the Policy that would allow
it to retroactively recover amounts it could have but did not charge policy owners through
the COI charge, or that would allow it to make larger COI deductions in one month because
it made lower COI deductions in another month. *See* Schirger Dec., Ex. B (Plaintiff's
Motion in Limine filed in *Vogt*, Dkt. 265) at 8-9. Mr. Witt prepared a damages calculation
that accommodated State Farm's offset defense, Schirger Dec., Ex. C (*Vogt* Trial Tr.),
132:19-24, which the jury adopted by awarding the exact amount of damages reflected in
that calculation.

to match its mortality rates. The *Vogt* court rejected that argument because the lawsuit did not set rates going forward, and the Eighth Circuit affirmed. *Vogt*, 2018 WL 4937069, at *3, *aff'd* 963 F.3d at 767-78. And where State Farm had already taken the position that it could set rates up to the Policy's maximum rates, the lawsuit benefited all class members by lowering the ceiling of what State Farm was permitted to charge. *Id*. Plaintiff's interpretation, which merely requires State Farm to remove undisclosed, non-mortality loads from COI rates, simply cannot harm any class member. Thus, the purported "cross-over" does not create any risk of intra-class conflict.

       2.    <u>State Farm's contention that it "pooled" its mortality rates does not create an intra-class conflict.</u>

Similarly, Plaintiff anticipates that State Farm will argue that Mr. Witt's use of unpooled mortality rates to calculate damages creates an intra-class conflict. At the *Vogt* trial, the key issue for the jury was determining what rates reflected State Farm's mortality expectations for the class. The plaintiff argued that State Farm should have used rates reflecting those mortality expectations as its COI rates because those rates were determined using only the factors listed in the Policy. State Farm identified its mortality rates in the actuarial memoranda for Form 94030. At initial pricing, these rates were identified as a percentage of the SF88-91 mortality rate table[7]—an "unpooled" mortality table—meaning the table assigns a different mortality risk depending on how long it has been since a given

---

[7] The SF88-91 is a table internal to State Farm and was used by State Farm to determine its "pricing" mortality for Form 94030.

policy was issued. Witt Dec., ¶ 38.[8] State Farm argued to the jury, however, that it had "pooled" the mortality rates shown in the SF88-91 before loading them with expenses and profits, and therefore, that damages should be determined using "pooled" mortality rates. A pooled rate table assigns the same mortality risk to each policy owner of the same age, sex, and rate class, regardless of how many years the policy has been held. *Id.* Using State Farm's litigation-created, pooled mortality estimate[9] to calculate damages would have reduced the overall damages to the class by $10,900,554.88. Schirger Dec., Ex. C (*Vogt* Trial Tr.), 132:21-23, 141:13-16. The jury rejected State Farm's contention that it pooled its mortality rates, and awarded damages using the unpooled morality rates.[10] *See Vogt*, 963 F.3d at 768 ("Although time and again throughout this appeal State Farm reaffirms its reluctance to accept the jury's finding on this point, the fact remains that the jury concluded State Farm did not pool its mortality rates and any argument premised on pooling must fail."); *Bally*, 335 F.R.D. at 299 ("When faced with this question of fact in *Vogt*, the jury found that State Farm used the unpooled mortality rates to calculate the ultimate COI charges.").

---

[8] The length of time elapsed since underwriting affects mortality risk because health conditions not present at the time of underwriting can develop. *See* Schirger Dec., Ex. C (*Vogt* Trial Tr.), 134:8-23.

[9] Notably, in *Vogt*, plaintiff chose not to challenge State Farm's unreliable "pooled" table, as State Farm had provided no evidence (until jury-rejected trial testimony) of its use.

[10] Mr. Witt alternatively calculated a lost Account Value total that incorporated pooled mortality rates, Schirger Dec., Ex. C (*Vogt* Trial Tr.), 141:5-12, which the jury rejected by awarding the damages plaintiff requested using unpooled mortality rates (but providing State Farm an offset).

Thus, the theory on which the plaintiff proceeded and prevailed at trial (that State Farm's mortality rates were not "pooled") *maximized* total class damages. However, State Farm argued that some class members' damages would actually have been higher if plaintiff had used pooled mortality rates in the damages model, and therefore, that there was an intra-class conflict between those class members and the rest of the class. Plaintiff anticipates State Farm will make the same argument here, and again, it should be rejected.

First, in certifying the classes in *Vogt* and *Bally*, those courts found that the question whether State Farm pooled its mortality rates has a common answer for all class members. *Vogt*, 2018 WL 1955425, at *4 (whether State Farm used a pooled mortality rate "will have a common answer for all of the members of the proposed class"); *Bally*, 335 F.R.D. at 300 (whether State Farm pooled its mortality rates "amounts to a factual dispute that does not create an intra-class conflict"). Thus, this common factual issue does not affect the propriety of class certification. *Id.*; *cf. Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 575 (D. Minn. 2014) (evidence and the law will determine when the breach occurred, "irrespective of the 'preferred' or 'optimal'" date for any single class member).

Second, State Farm never produced a mortality table containing pooled rates, and never produced credible evidence that it did in fact pool its mortality rates before loading them with expenses and profits. It would have been detrimental to all class members for the plaintiff to adopt State Farm's unsupported position. Schirger Dec., Ex. C (*Vogt* Trial Tr.), 141:21-142:13. As the *Vogt* court found in later refusing to decertify the class, plaintiff "cannot be faulted for failing to argue a fact that was found untrue." *Vogt*, 2018 WL 4937069, at *3.

21

Third, State Farm is wrong that an intra-class conflict is created simply because class members may have differing preferences for how damages are calculated. *Vogt*, 963 F.3d at 768 ("[E]ven if there are slightly divergent theories that maximize damages for certain members of the class, 'this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability.'") (quoting *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 79 (E.D. Va. 2006); citing Newberg on Class Actions § 3:62 (5th ed.) ("Courts generally reject the argument that an intra-class conflict exists when divergent theories of liability would benefit different groups within the class," including where "different class members desir[e] different methods of calculating damages.")); *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975) ("[T]he conflict [over the calculation of damages], if any, is peripheral, and substantially outweighed by the class members' common interests.").

Fourth, State Farm's argument that its unpooled mortality rates are not the appropriate rates with which to calculate damages because its actual COI rates were pooled is a legal challenge that will have the same answer for all class members, but notably, this argument was rejected by the *Vogt* and *Bally* courts. *Vogt*, 2018 WL 1747336, at *6 ("By referencing both the 'policy year' and the 'policy anniversary' in describing the monthly COI rates, the Policy incorporates the duration of the policy as a factor affecting those rates."); *Bally*, 335 F.R.D. at 299 ("Form 94030 references 'policy year' in the provision describing the factors that go into the monthly COI charges, suggesting that Policy year was incorporated into the pricing scheme.").

Fifth, because the jury in *Vogt* found as a matter of fact that State Farm did *not* pool its mortality rates, Plaintiff will argue that State Farm is precluded from arguing that it did pool its mortality rates. In determining whether issue preclusion applies, "(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *James v. Paul*, 49 S.W.3d 678, 682 (Mo. 2001).[11] Each of these factors applies here. The issue of whether State Farm is collaterally estopped from arguing it pooled its mortality rates need not be decided now, but it does provide further support for Plaintiff's argument that he is an adequate representative of the Class in supporting a damages model that uses unpooled mortality rates.

### 3.   State Farm's contention that it differentiated for tobacco use does not create an intra-class conflict.

Plaintiff also anticipates State Farm will argue that Mr. Witt's calculation of damages using mortality rates that do not differentiate between tobacco users and non-

---

[11] The law of issue preclusion in Missouri applies here. *See C.H. Robinson Worldwide, Inc. v. Lobrano*, No. 10—4966, 2011 WL 2912700, at *2 (D. Minn. July 19, 2011) ("The effect of a decision rendered by a federal court sitting in diversity is determined by 'the law that would be applied by state courts in the State in which the federal diversity court sits.'") (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)).

users[12] creates an intra-class conflict, as it did in *Bally*. The *Bally* court rejected this argument, finding, like it did in rejecting State Farm's pooled mortality arguments, that whether State Farm's mortality rates were blended for tobacco use was a common question of fact (one likewise resolved by the *Vogt* jury) appropriate for class certification, and whether State Farm did or did not measure its mortality expectations for the Policy using blended tobacco considerations does not create an intra-class conflict. *Bally*, 335 F.R.D. at 300. Notably, Mr. Witt uses rates blended for tobacco/non-tobacco use because State Farm's pricing mortality rates—the rates that State Farm told regulators measured its mortality expectations and that State Farm itself said were the rates onto which it added its profits and expense loads (Schirger Dec., Ex. C (*Vogt* Trial Tr.), 111:10-112:13, 113:16-114:7, 115:3-22, 120:11-121:3, Witt Dec., Ex. G (N.J. Actuarial Memo.) at 3, 5)—accounted for tobacco use on a blended basis. Schirger Dec., Ex. C (*Vogt* Trial Tr.), 153:1-6, 155:4-14, 158:13-159:12.

Thus, the Court should conclude that Plaintiff and his counsel satisfy the adequacy requirement, and therefore appoint Plaintiff as the Class Representative and his counsel as Class Counsel.

## VI.   PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(B)(3)

### A.   Predominance is satisfied.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v.*

---

[12] This means the mortality risk related to tobacco use is spread across all policy owners, or "blended." Schirger Dec., Ex. C (*Vogt* Trial Tr.), 162:15-17, 206:5-8; Witt Dec., ¶ 37.

*Windsor*, 521 U.S. 591, 623 (1997). Thus, predominance "goes to the efficiency of a class action as an alternative to individual suits." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016). When determining whether common questions predominate, the court asks whether if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class. *See Blades v. Monsanto Co.*, 400 F.3d 562, 566-67 (8th Cir. 2005). "When there are issues common to the class that predominate, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 833 (8th Cir. 2016) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)) (emphasis omitted).

### 1.   Liability is subject to class-wide determination.

Because the Policy is a standardized form contract, not subject to individual negotiation, and analyzed under a single state's law, the case is replete with common questions of law and fact that predominate over any individual questions affecting class members. Courts routinely find that common issues predominate under these circumstances. *See, e.g.*, *Vogt*, 2018 WL 1955425, at *6 ("The major portion of the evidence on the claims for breach of contract, conversion, and declaratory judgment is capable of consideration on a class wide basis. The terms of the Policy are the same for all class members. State Farm has not suggested that the determination of COI rates varied on a case-by-case basis. Thus, common questions predominate."); *Bally*, 335 F.R.D. at 304 (finding predominance satisfied; rejecting State Farm's argument that statute of limitations

25

issues defeated predominance); *USAA COI*, 336 F.R.D. at 555 (finding predominance satisfied because the class policies were form policies that were subject to interpretation under a single state's law, and the insurer's performance was identical under each policy); *Phoenix COI*, 2013 WL 12224042, at *13 (predominance was satisfied because "[t]he insurance policies at issue contain provisions regarding how COI rates are set and what Phoenix can consider in making any changes in rates, and these terms are substantively identical for all the policies held by the members of the Classes"); *Transamerica COI*, 2017 WL 6496803, at *13 (predominance satisfied because "Plaintiffs' claims are premised on Transamerica's uniform policy language and uniform conduct"); *Lincoln Life COI*, 330 F.R.D. at 382-83 (predominance satisfied where the "contract language at issue does not vary by individual class member" and there are "no individualized issues with respect to defendants' conduct towards members of the putative class."); *John Hancock COI*, 2017 WL 4284163, at *6-7.

a)   *Common questions predominate Plaintiff's breach of contract claims.*

The substantive elements of Plaintiff's breach of contract claims require the same proof for each class member. "The elements of a breach of contract claim are '(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant.'" *Lyon Fin. Servs., Inc. v. Illinois Paper and Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quoting *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011)).  Each of

these elements will be proven through the same evidence for each class member. This is precisely what was proven in *Vogt*, culminating in a class-wide jury verdict.

Plaintiff's first breach of contract claim (Count I) requires the same proof for all class members. Plaintiff contends that the Policy authorizes State Farm to use only the listed mortality factors when determining the COI rates used to calculate the COI charges that are deducted from Plaintiff's Account Value each month. Count I alleges that State Farm breached and continues to breach the Policy by loading COI rates with non-mortality factors, including without limitation, expense experience and profit considerations. Compl. ¶¶ 32-40, 58-65.

Common proof can be used to calculate COI rates that are, as Plaintiff contends is required by the Policy, based on the mortality factors listed in the Policy, which can then be compared to the COI rates State Farm actually used for each policy owner to determine the amount of the non-mortality loads and resulting damages. *See* Witt Dec., ¶¶ 48-58. Because the same proof will determine State Farm's liability and class members' damages, common questions predominate over any individual questions.

Plaintiff's breach of contract claim brought under Count II likewise requires the same proof for all class members. Plaintiff contends that the Policy puts a cap on the amount State Farm may deduct in expenses each month. Count II alleges that State Farm breaches the Policy's fixed Expense charge provision by adding expense loads to its expected mortality to determine its COI rates, thereby imposing unauthorized expenses through its COI charges. Compl. ¶¶ 42-43, 66-69. The same proof will be used for all class members to determine whether State Farm, does, in fact, include unauthorized expense

loads in its COI charges and the amount of such loads. Because the same proof will determine State Farm's liability and class members' damages, common questions predominate over any individual questions.

2.    Damages can be determined on a class-wide basis.

Further demonstrating the predominance of common questions, damages are capable of being calculated on a class-wide basis (and for each individual class member) using a common formula. That the specific amount of damages class members suffered may vary does not preclude certification. *See, e.g., Day*, 827 F.3d at 833 (8th Cir. 2016). If Plaintiff establishes State Farm breached its standard form Policy (Counts I and II), each class member's claims would require only proof of damages.[13] The monetary harm to policy owners of State Farm's practice of loading unlisted factors into COI rates, under Plaintiff's Counts I-II, can be calculated in a straightforward way for each policy owner by comparing the COI rates State Farm actually used in determining COI charges with rates determined using only the factors listed in the Policy, and recalculating Account Values using the rates that do not include the undisclosed loads. Witt Dec., ¶¶ 28-45. This calculation can be performed using the policy-level data from administrative systems in place at State Farm. *Id*. ¶¶ 46-61. State Farm retains within its administrative systems a record of, and transaction information related to, premium payments, credited interest rates, policy loans, and policy charges, among other policy data. *Id*. at ¶¶ 46-47. Using this data,

---

[13] In the *Vogt* case, after the district court certified the Missouri class, it granted partial summary judgment in favor of the class. *See Vogt*, Dkt. 335 at 1. The subsequent trial was limited to the determination of damages. *See id.*

Account Values can be recalculated using alternate COI rates, while leaving unchanged the actual premium payments made, past investment experience, policy loans taken, and other policy charges. *Id*. ¶¶ 51-61. This is the same methodology Mr. Witt applied in *Vogt* and *Bally*.

Because State Farm maintains the data used in this methodology for every class member, this methodology does not require any class member to provide individualized evidence. And, although the amount of losses for each policy owner may vary, because the same methodology and formulas are applied for each policy owner using State Farm's own policy owner data, calculating class-wide losses under this methodology is simply an administrative task capable of being performed on a class-wide basis.[14]

In *Vogt* and *Bally*, State Farm challenged the reliability of Mr. Witt's damages model. Despite its arguments being repeatedly rejected, Plaintiff expects State Farm to make the same arguments here.[15] These arguments should be rejected as a basis to deny class certification, for the reasons explained below.

---

[14] The aggregate lost Account Values calculated by Mr. Witt will depend on identification of policy owners who are or will ultimately be excluded from the Class, either because they exclude themselves during the opt-out period, or because they are, for example, State Farm employees who have not yet been identified as such by State Farm.

[15] Each of State Farm's challenges to the reliability of Mr. Witt's damages model goes to the merits of whether the model correctly measures damages, not the Rule 23 question of whether it is capable of measuring damages on a class-wide basis. *See In re Zurn Pex Plumbing Products Liability Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) (holding the Court need not conduct a full *Daubert* analysis at the class certification stage because any "desire for an exhaustive and conclusive *Daubert* inquiry before the completion of merits discovery cannot be reconciled with the inherently preliminary nature of pretrial evidentiary and class certification rulings."). Plaintiff nevertheless addresses these issues here to provide the Court context to these arguments.

a)   *State Farm's offset affirmative defense premised on the cross-over does not affect the reliability of Plaintiff's damages model.*

In *Vogt* and *Bally*, State Farm argued that the fact that Mr. Witt's model *could* produce an "undercharge" in some months indicates the model does not reliably measure the portion of the COI that was determined using unlisted factors. State Farm is wrong. Instead, the rare occurrence of the cross-over simply indicates that State Farm's COI rates occasionally did not include a load for unlisted factors. State Farm's contention that the cross-over phenomenon is increasing, even if true, is irrelevant to the reliability of Mr. Witt's damages model. It simply reinforces Plaintiff's point that State Farm's actual COI rates are not in step with its mortality rates, which are increasing as each policy owner ages. As both the *Vogt* and *Bally* courts found, "that State Farm recoups profits and expenses in the earlier years of the Policy and refrains from doing so later—when more policies have lapsed or been surrendered, and when actual mortality costs increase—does not indicate a flaw in the damages model; instead, it more likely indicates a calculated business decision." *Vogt*, 2018 WL 4937330, at *5; *Bally*, 335 F.R.D. at 300 (same).

b)   *Calculating damages for policy owners who selected "Death Benefit Option 1" and for whom a death benefit was paid does not affect the reliability of Plaintiff's damages model.*

State Farm also argued in *Vogt* and *Bally* that Mr. Witt's damages model was unreliable because it calculates a lost Account Value for class members who selected Death Benefit Option 1 when they purchased their policies and were subsequently paid a death benefit. Upon death, the beneficiary of a Death Benefit Option 1 Policy is entitled only to the face amount of the policy, regardless of the Account Value. State Farm thus argued that

these class members should not have been awarded damages. However, as the district court and Eight Circuit concluded in *Vogt*, because State Farm deducted COI charges that included undisclosed loads from these policy owners' Account Values during their lives, Mr. Witt's damages model accurately calculates the amount of their damages. *See Vogt*, 963 F.3d at 770. Indeed, Plaintiff's calculation of these class members' lost Account Values provides "the most reasonable basis for measuring the harm that was incurred during the life of the policyholders." *Id.* In any event, their presence in the Class does not impact the propriety of class certification because they are an identifiable group. *See Bally*, 335 F.R.D. at 300; *Vogt*, 2018 WL 4937330, at \*6.

> c)   *Mr. Witt's use of State Farm's unpooled and tobacco-blended pricing mortality rates to measure damages is reasonable and appropriate.*

In *Vogt* and *Bally*, State Farm argued that Mr. Witt's use of State Farm's pricing mortality rates to measure damages was incorrect because those rates are unpooled and tobacco-blended while there is no dispute that State Farm's actual COI rates are pooled and tobacco-distinct. Those courts rejected those arguments, concluding that the COI rates provision's reference to "policy year," indicates that the duration of the Policy, i.e., how long it had been since the Policy was issued, was incorporated into the COI rates, meaning they must be unpooled, and that the COI rates provision does not reference tobacco use as a mortality factor on which the COI rates will be differentiated. *Vogt*, 2018 WL 1747336, at \*6 (finding "the Policy incorporates the duration of the policy as a factor affecting those rates"); *Bally*, 335 F.R.D. at 299 (finding "Form 94030 references 'policy year' in the provision describing the factors that go into the monthly COI charges, suggesting that

31

Policy year was incorporated into the pricing scheme"); *Bally*, 335 F.R.D. at 299 (holding "the blended [tobacco] rates that Witt used *reflect the terms of Form 94030*, and his use of those rates comports with plaintiff's damages theory of COI charges beyond the terms of the Policy") (emphasis added); *Vogt*, 963 F.3d. at 769 (stating that Witt did not "differentiate between tobacco and non-tobacco users, [and] there was no need for the damages models to take this mortality factor into account as this was not a mortality factor listed in the policy"). Thus, State Farm's challenges "do[] not negatively impact [the] reliability" of Witt's methodology. *Bally*, 335 F.R.D. at 300.

That classwide damages can be calculated using a methodology that can be applied mechanically for every class member using State Farm's policy records supports a finding that predominance is satisfied.

### 3.   Class members' subjective understandings of the Policy's terms do not create individualized issues.

State Farm will also likely contend, as it did in *Bally* that each class member's subjective understanding of the Policy's terms is relevant to its interpretation, and therefore, whether State Farm breached the Policy. *See Bally*, 335 F.R.D. at 301. In other words, it is State Farm's contention that the Policy could have different meanings for different policy owners. Not only would this be an absurd outcome where State Farm has acted uniformly as to all class members in its performance of its form Policy, it is also legally incorrect. Under Minnesota law, it is not proper to consider extrinsic evidence when interpreting an ambiguous insurance policy "where the language used … is chosen by the insurance company[.]" *Garrick v. Northland Ins. Co.*, 469 N.W.2d 709, 713 (Minn. 1991)

(quoting *Rusthoven v. Commercial Standard Ins. Co.*, 387 N.W.2d 642, 645 (Minn. 1986)). "Insurance contracts are contracts of adhesion between parties not equally situated." *Vierkand by Johnson v. AMCO Ins. Co.*, 543 N.W.2d 117, 120 (Minn. Ct. App. 1996). Where an adhesive insurance policy is ambiguous, the policy must be "strictly interpreted against the insurer." *Rusthoven*, 387 N.W.2d at 644-45 ("One of the fundamentals of insurance law … is that ambiguous language in an insurance policy is to be construed in favor of the insured.").

Further, such construction is an objective exercise, inherently forbidding the consideration of individualized knowledge or understanding of the terms of the writing. *Id.* at 645 ("The result of such a construction, however, must not be beyond *the reasonable expectations* of the insured.") (emphasis added) (citing *Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.*, 366 N.W.2d 271, 277 (Minn. 1985) ("The result of the lack of insurance expertise on the part of insureds and the recognized marketing techniques of insurance companies is that the *objectively reasonable expectations* of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.") (internal quotations omitted) (emphasis added)).

Because under Minnesota law the subjective understanding of each class member as to the meaning of the Policy's COI rates provision is not admissible to resolve any ambiguity in the Policy, these subjective understandings do not create individualized issues that defeat predominance. Likewise, because the Policy itself explicitly and unambiguously prevents an agent's statements to a policy owner from having any effect on the meaning of

33

the Policy, what an agent may have told a prospective insured, even if otherwise admissible under Minnesota law, could have no bearing on the interpretation of the Policy. *See* Policy, at 11; *see also Bally*, 335 F.R.D. 288, 302 (N.D. Cal. 2020) (holding that any unwritten representations by State Farm agents to individual policyholders does not affect the Court's interpretation of the form policy at issue); *USAA COI*, 336 F.R.D. at 556-57 (rejecting insurer's argument that agents' individualized presentations to policyholders defeats predominance). Accordingly, class members' subjective understandings of the meaning of the Policy does not create individualized issues of policy interpretation.

    4. <u>State Farm's statute of limitations defense does not create individualized issues.</u>

  Any individualized issues related to the statute of limitations do not defeat predominance due to State Farm's fraudulent concealment of the factors it actually used in calculating Cost of Insurance Rates. *See* Class Action Complaint at ¶¶ 44-47. "Fraudulent concealment tolls the statute of limitations until the party discovers, or has a reasonable opportunity to discover, the concealed defect." *Minn. Laborers Health and Welfare Fund v. Granite Re, Inc.*, 844 N.W.2d 509, 514 (Minn. 2014) (internal quotations omitted). "To establish fraudulent concealment, a plaintiff must prove there was an affirmative act or statement which concealed a potential cause of action, that the statement was known to be false or was made in reckless disregard of its truth or falsity, and that the concealment could not have been discovered by reasonable diligence." *Haberle v. Buchwald*, 480 N.W.2d 351, 357 (Minn. Ct. App. 1992).

As the Eighth Circuit ruled in *Vogt*, no diligent policyholder could have discovered State Farm's wrongdoing here. 963 F.3d at 765 ("Although, with the help of an attorney and an actuarial expert, Vogt was ultimately able to determine that the COI fees included non-enumerated factors, there is no evidence in the record that would have placed a reasonably prudent person on notice of a potentially actionable injury simply based on the rising COI fees and annual statements.") (internal quotations omitted).[16]

As there is no reliance requirement for fraudulent concealment in Minnesota, that just leaves the question of whether State Farm engaged in affirmative acts of concealment and whether the statement was known to be false or was made in reckless disregard of its truth or falsity, questions which focus solely on State Farm's conduct—therefore presenting class-wide issues. *See USAA COI*, 336 F.R.D. at 556 (certifying the class of policyholders to pursue a fraudulent concealment theory where there is no reliance requirement for fraudulent concealment under Texas law).[17]

---

[16] Even if this Court concluded otherwise, individual issues which arise in relation to an allegation of fraudulent concealment, such as discovery and diligence, "are not so problematic as to frustrate the efficacy of pursuing a class action resolution of this controversy. Rule 23(b)(3) does not require that common questions be dispositive or significant; it only requires that common questions predominate." *In re Potash Antitrust Litig.*, 159 F.R.D. at 699 (Concluding "common issues of law and fact predominate over individual issues related to Plaintiffs' proof of fraudulent concealment.").

[17] Additionally, if this Court concludes fraudulent concealment could not be resolved class-wide, a class limited to policies active during the last six years prior to the filing of the complaint should be certified. State Farm had an "ongoing obligation" to charge cost of insurance rates as specified in the policy and "a breach of contract occurred each year when the insured was charged a [cost of insurance] rate that exceeded the rate specified[.]" *See Advance Trust & Life Escrow Services, LTA v. ReliaStar Life Ins. Co.*, No. 18-cv-02863, 2020 WL 5229677, at *10 (D. Minn. Sept. 2, 2020) (citing *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801, 803 (Minn. 1989) ("[Plaintiff] complains of a series of breaches, ... each of

CASE 0:20-cv-01567-PAM-BRT   Doc. 55   Filed 06/16/21   Page 43 of 46

Thus, State Farm's statute of limitations defense does not undermine the predominance of the common issues.

###### 5.    Superiority is satisfied.

Finally, Rule 23(b)(3) requires that a class action be superior to other methods of adjudication, an analysis that "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). In determining whether superiority is satisfied, a court considers: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Rule 23(b)(3).

Because this case involves a form contract and uniform Minnesota law governing its interpretation, a class action will be just as manageable as a single plaintiff case. There are no other class actions pending against State Farm making the claims asserted here on behalf of a Minnesota class. In addition, because all class members' policies were issued in Minnesota, concentrating this litigation in Minnesota is desirable. Class certification will greatly benefit the many policy owners, all of whom are in the dark about how State Farm calculates COI charges because State Farm never discloses its COI rates or the factors it uses to determine them, and all have an interest in securing the just adjudication of their

---

which … could have occurred only at the close or at some date after the close of a contract year. Thus, Levin asserts separate causes of action with different accrual dates.")).

rights as against State Farm. *See Bally*, 335 F.R.D. at 305; *Vogt*, 2018 WL 1955425, at *7; *USAA COI*, 336 F.R.D. at 558 (all finding superiority satisfied).

6.   <u>Rule 23(b)(2) Is Satisfied.</u>

With respect to Plaintiff's claim for declaratory judgment and injunctive relief at Count IV, the proposed Class satisfies Rule 23(b)(2) because State Farm "has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Determination of the merits of Count IV will turn on the same evidence supporting Counts I and II. As such, certification of Count IV under Rule 23(b)(2) is appropriate. *See Vogt*, 2018 WL 1955425, at *7 (certifying the plaintiff's declaratory judgment claim under 23(b)(2) for purposes of interpreting the Policy because "the terms of the Policy are the same for all potential class members, [and therefore] the interpretation will result in one declaratory judgment applicable to all class members"); *Bally*, 335 F.R.D. at 305 (same, stating: "The terms of Form 94030 are the same for all prospective Class members, so an injunction or declaration relating to the contract terms will be uniform."); *USAA COI*, 336 F.R.D. at 558-59 (approving of "'divided certification,' certifying the damages claims under Rule 23(b)(3) while certifying the injunctive relief under 23(b)(2)").

## VII.   CONCLUSION

Because all of the required elements of Rule 23 are satisfied, Plaintiff's motion for class certification should be granted, and Plaintiff Jaunich should be appointed as the Class Representative and his counsel appointed as Class Counsel.

Dated: June 16, 2021

Respectfully submitted,

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

s/ Karen Hanson Riebel
Karen Hanson Riebel (MN #0219770)
Kate M. Baxter-Kauf (MN #392037)
Maureen Kane Berg (MN #033344X)
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Tel:    (612) 339-6900
Fax:    (612) 339-0981
khriebel@locklaw.com
kmbaxter-kauf@locklaw.com
mkberg@locklaw.com

*Local Counsel for Plaintiff John E. Jaunich*

**MILLER SCHIRGER LLC**

/s/ Joseph M. Feierabend
John J. Schirger (admitted *pro hac vice*)
jschirger@millerschirger.com
Matthew W. Lytle (admitted *pro hac vice*)
mlytle@millerschirger.com
Joseph M. Feierabend (admitted *pro hac vice*)
jfeierabend@millerschirger.com
4520 Main Street, Suite 1570
Kansas City, MO  64111
Tel:    (816) 561-6500
Fax:    (816) 561-6501

**STUEVE SIEGEL HANSON LLP**
Norman E. Siegel (admitted *pro hac vice*)
siegel@stuevesiegel.com
Lindsay Todd Perkins (admitted *pro hac vice*)
perkins@stuevesiegel.com
Ethan M. Lange (Tex. Bar No. 24064150)
lange@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel:    (816) 714-7100
Fax:    (816) 714-7101

**MORGAN & MORGAN**
John Yanchunis FL # 324681 (*pro hac vice*)
201 N Franklin Street, 7th Floor
Tampa, Florida 33602
Tel:    (813) 275-5272
Fax:    (813) 222-4736
JYanchunis@ForThePeople.com

*Attorneys for Plaintiff John E. Jaunich*